STEPHEN B. BRINKLEY, plaintiff in error, *vs.* HUGH BUCH-
ANAN, judge, defendant in error.

It is not competent for a judge of the superior court, sitting at chambers, to
entertain an original motion for new trial, where no prior order has been
passed on the subject in term time. The dissenting opinion of WARNER,
Chief Justice, in *Spann vs. Clark,* 47 *Georgia,* 369, approved and applied.

*Mandamus.* New trial. Before the Supreme Court. July
Term, 1875.

Reported in the opinion.

P. F. SMITH; McCAY & TRIPPE; B. H. HILL & SON,
for petitioner.

THOMAS W. LATHAM, solicitor general, for respondent.

BLECKLEY, Judge.

Brinkley was under sentence of death for the offense of
murder. His case had been before this court on writ of error,
and the judgment of conviction had been affirmed. The case
was ended. The record had been fully made up. The courts,
in the regular course of proceedings, had discharged their
functions, and it remained only for the executioner to perform
his. The day of execution was near at hand. The superior
court in which the conviction took place, and in which was
the record of the conviction, was not in session, and the next
term was some months distant. Under these circumstances,
Brinkley's counsel made a motion, in his behalf, for a new
trial on the ground of newly discovered evidence. It was al-
leged that the evidence had been discovered since the last term
of the court, and that if time and opportunity were given for
its introduction, it would establish the prisoner's insanity at
and before the commission of the offense. The motion was
made in vacation before the judge of the circuit, who not only
refused to grant a rule *nisi* for a new trial, but also refused to
sign and certify a bill of exceptions, which was presented to

him in order to bring his decision before this court for review. Counsel for Brinkley, thereupon, applied to this court, in due form, for a *mandamus nisi*, calling upon the judge to show cause why he should not be compelled to sign and certify the bill of exceptions.

Apart from the merits of the motion for new trial, there is an insuperable obstacle in the way of the success of this application.   In the opinion of this court, as now constituted, the judge below had no legal power or authority to entertain the motion in vacation, however extraordinary the case, or however sufficient the grounds of the motion might be deemed, if presented in proper time and made to a competent tribunal. This question, we are aware, has been decided differently. In the case of *Spann vs. Clark, Judge,* 47 *Georgia,* 369, a majority of the court held that in extraordinary cases the motion might be made before the judge in vacation; but the chief justice dissented, and his dissenting opinion is still satisfactory to himself, and in its reasoning and conclusions the other members of the court concur.   The argument is so nearly exhausted by the chief justice in that opinion that we might rest upon it alone, and perhaps any attempt which I may make to give it support, will add little or nothing to its strength.   Nevertheless, as the question is important and has proved doubtful enough to produce a divided bench, what further can be briefly and pertinently said upon it ought to be said.

The inquiry relates to applications for new trials in extraordinary cases.   In ordinary cases it is clear that the application must be made not only in the term, but during the term at which the trial was had.   The power to originate motions in extraordinary cases, and of the judge to hear them, in vacation, is supposed to be derived from two sections of the Code: sections 3719 and 3721.   The former of these reads thus: "All applications for a new trial, except in extraordinary cases, must be made during the term at which the trial was had, but may be heard, determined and returned in vacation;" and the latter reads thus: "In the case of a motion for a new trial made after the adjournment of the court,

some good reason must be shown why the motion was not made during the term, which shall be judged of by the court. In all such cases twenty days' notice shall be given to the opposite party." Now, an examination of the cases decided by this court prior to the Code will show that these provisions are not new. They were not introduced by the Code, but were adopted by it from the reports. In the reports extant at the time the Code was compiled, they were taught, both by precept and example. Two of the head-notes in *Graddy vs. Hightower*, 1 *Kelly*, 252, are as follows: "The judges may make rules for new trials returnable in vacation, in cases where the application has been first made in term, and recorded, and where the record shows that such rule is made so returnable in vacation." "When the term of the court at which the judgment was rendered has passed, and no application made and recorded at that term, the record in the cause having been finally made up, the court has no power to grant a new trial, except in some peculiar and *extraordinary cases*." In that case the practice as to motions for new trials is carefully discussed by Judge NISBET. He adverts to the prretice in the English courts, and shows that there an exceptional rule prevailed in extraordinary cases; which was, not for a judge, out of term, to act, but for the court, in term, to act on its own motion. Further on in the opinion a purpose appears to adopt the English rule literally, and not to hear a motion at the *instance of a party* at all, unless made at the first term; and this took such distinct shape that it passed into one of the head-notes of the case, which, however, it is unnecessary to transcribe here. But subsequently, in 23 *Georgia Reports*, 493, an extraordinary case presented itself, and was ruled thus: "In extraordinary cases, where the ends of justice require it, and the cause is still within the control of the court, a rule *nisi* may be moved after the expiration of the term at which the trial was had." Accordingly, a motion was entertained, made in term, not in vacation, after the term of trial, even after the case had been before this court on writ of error. Here, then, was an actual example of an extraor-

Brinkley *vs.* Buchanan.

dinary case which the codifiers had before them. They found in the body of the opinion this language, "Our courts, however, have adopted a rule of practice, which, as far as I know, prevails as a general rule, that when a party is dissatisfied with a final verdict in a cause, he must move a rule *nisi* at the term of the court at which the trial was had, calling on the opposite party to show cause at the next succeeding term of the court why a new trial should not be granted. This is the general rule. But cases may arise, and have arisen, in which it would be proper and just for the court to grant the rule though the term had expired at which the trial was had. This court has recognized the power of the court to grant a new trial after the expiration of the term at which the cause was tried, in peculiar and extraordinary cases:" 23 *Georgia Reports,* 498.

From the language which I have quoted from this case and the prior one of *Graddy vs. Hightower,* it was not difficult for the codifiers to make up the whole of the two sections of the Code which relate to this subject, except the last sentence, touching notice. For that sentence they had a prior statute and three decisions explaining it: See 1 *Kelly,* 252; 21 *Georgia Reports* 214; 30 *Ibid.,* 677. These three decisions show, conclusively, that the notice contemplated was not to be of the original application, but of the final hearing. It was to precede the rule absolute, not necessarily to precede the rule *nisi.*

Let it be borne in mind that the precise point to be settled is, not whether an extraordinary motion can be made after the court has adjourned at which the application in an ordinary case must be made, but solely whether it can be entertained by the judge in vacation. The inquiry relates, not to time, but to tribunal. Is the judge, sitting at chambers, without any previous order taken in term, clothed, *pro hac vice,* with the powers of the superior court? The codifiers had before them an early decision (1 *Kelly,* 300,) declaring that "a court cannot originate a case or a motion in vacation and give judgment thereon, unless the authority is expressly conferred by law. But when a motion originates during a regular term

and contains a provision for the further action of the court upon it, and for the rendering of its judgment in vacation to be entered upon the minutes of the court as of such term, such judgment so rendered in vacation is legal, and should be entered by the clerk accordingly." The substance of this decision is condensed and reproduced in the Code as follows : "Said judges cannot exercise any power out of term time except the authority is expressly granted; but they may, by order granted in term, render a judgment in vacation" : Code, section 249. Are the judges *expressly* empowered to entertain an original motion for a new trial in vacation? This is the last and final form of the question. The truth is, that neither one of the sections of the Code relied upon for the power, states whether, in extraordinary· cases, the application may be made out of term time or not. Taken separately or together, they go no further than the decisions went which I have cited from—1 *Kelly* and 23 *Georgia Reports*. The real struggle is, to deduce the judge's power from them by implication. If it were otherwise, it would most probably be seen to be otherwise by all readers alike. To ascertain an express· grant of power requires little more than correct definition. If the necessary words were before us, we should probably have no controversy but what could be settled by an appeal to the dictionary. But we differ for the simple reason that we enter the region of inference. We become logicians when we ought to be philologists; we reason when we ought to define.

Let us bring the precise terms of the two sections of the Code under closer scrutiny. Section 3719, provides alone for cases other than extraordinary ; extraordinary cases are expressly excluded from its provisions. The words are "All applications for a new trial, except in extraordinary case, must be made during the term at which the trial was had, but may be heard, determined and returned in vacation." The only thing expressed in this section concerning extraordinary cases, is what is contained in the exception, and that simply puts such cases beyond the purview of the section altogether. The only other possible construction is, that, as to extraordinary

cases, there is a negative pregnant implied in the words "must be made during the term at which the trial was had;" but if so, the affirmative with which the negative is pregnant is, not that extraordinary applications may be made in vacation, but at some term other than the one at which the trial was had. To draw any other affirmative in respect to extraordinary applications from this section, would be, it seems to me, to do as we *will* and not as we *ought;* would be to follow the law of force instead of the law of duty. If it be supposed that the concluding words of the section, namely: "may be heard, determined and returned in vacation," apply to extraordinary motions, as well as to ordinary, it may be conceded, without impairing the force of the argument; for if these words apapply to both classes of motions, it is to both alike, that is, not to original motions made in vacation, but to motions made in term, and afterwards "heard, determined and returned in vacation."

But the true view of section 3719 is that it deals with ordinary motions only, leaving the others to be treated of in section 3721, which reads as follows: "In the case of a motion for a new trial, made after the adjournment of the court, some good reason must be shown why the motion was not made during the term, which shall be judged of by the court. In all such cases, twenty days' notice shall be given to the opposite party." It is plain that nothing is here expressed about entertaining the application out of term time. The judge is not mentioned; vacation is not mentioned. On the contrary, the court is mentioned; the reason relied upon to excuse delay is to be judged of by the *court;* and, if inference is to be indulged at all, the more natural and proper inference would seem to be that the application is to be made to the court proper. We are forewarned by section 249 that the judge cannot exercise any power out of term time unless the authority is *expressly* granted. Here is no express grant, but on the contrary, an implied grant which looks away from the judge to the court. The judge (except as to equity jurisdiction, that court being always open: Code, section 4222,)

constitutes the court, out of term, only when some previous order has been taken in term to be perfected or completed in vacation: 1 *Kelly*, 300; Code, section 249. With this restriction, section 3721 may be construed and administered in full harmony with the old law, and with all other provisions of the Code. By simply remembering that the general rule is, that motions for new trial are to be made at the term of trial, and that section 3719 covers all excepted cases, we shall be at little loss to discover what is meant by the words "after the adjournment of *the* court," or the words "during *the* term." The general rule requires that motions shall be made before the court adjourns and during the very term at which the trial was had; the exception is, that in extraordinary cases motions may be made after the adjournment of *that* court, where good reason is shown for not moving during *that* term. If it had been meant to change the prior law, and allow applications for new trial to be made in vacation, it would, I think, have been done in plain terms. It is scarcely to be credited that the codifiers forgot their own rule and omitted to declare in express words, so important a power as that of sitting down at any moment and opening a solemn record of the court, made up by final judgment, and constituting the most sacred repository of human rights.

Application denied.